UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS CLARK, | Case No. ED CV 09-9453 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. He claims that the ALJ erred when she determined that he: (1) could perform the jobs of parking lot attendant and night watchman; and (2) was not credible. (Joint Stip. at 3-9, 12-17.) For the following reasons, the Court concludes that the ALJ erred in relying on the vocational expert's testimony that Plaintiff could perform these jobs and remands the case to the Agency for further proceedings consistent with this Opinion.

II.

                    SUMMARY OF FACTS AND PROCEEDINGS

    Plaintiff was born on July 7, 1959. (Administrative Record
("AR") 49.) On May 14, 2007, he filed an application for SSI
benefits, alleging an inability to work since January 1, 2003, due to
asthma, epilepsy, seizures, arthritis, depression, nerve damage in his
right arm, damage to his left shoulder, and a hernia. (AR 149, 155.)
After the Agency denied the application, he requested and was granted
an administrative hearing. (AR 81-87, 90-91.) On April 20, 2009,
Plaintiff appeared with counsel at the hearing and testified. (AR 45-
75.) On July 29, 2009, the ALJ issued a decision denying Plaintiff's
application. (AR 7-18.) Plaintiff appealed to the Appeals Council,
which denied review. (AR 1-4.) He then commenced the instant action.

                                    III.

                                 ANALYSIS

A.    The ALJ's Determination That Plaintiff Could Work

    Plaintiff contends that the ALJ erred by relying on the testimony
of a vocational expert who concluded that Plaintiff could perform the
jobs of parking lot attendant and security guard. (Joint Stip. at 3.)
He argues that this testimony conflicted with the Dictionary of
Occupational Titles ("DOT") and that the vocational expert never
provided an explanation for departing from the DOT. For the following
reasons, the Court agrees.

    Once a claimant has met his burden at step four of demonstrating
that he cannot perform his past relevant work, the burden shifts to
the Agency at step five to establish that the claimant is capable of
performing other jobs. 20 C.F.R. §§ 416.920(f)(g), 416.960(c); see
Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). This burden

can be met through the use of a vocational expert. See 20 C.F.R. § 416.966(e); *see also Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The existence of other jobs may be established by taking notice of reliable job information contained in various publications, including the DOT. 20 C.F.R. § 416.966(d). The DOT is a presumptively authoritative source on the characteristics of jobs in the national economy. *See Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001).

Nevertheless, the DOT is not the sole source for this information and the Agency may rely on the testimony of a vocational expert for information on jobs. *Johnson*, 60 F.3d at 1435. But, before relying on a vocational expert's testimony, an ALJ must inquire whether the testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); Social Security Ruling ("SSR") 00-4p. Where the vocational expert's testimony differs from the DOT, he must provide a persuasive rationale supported by the evidence to justify the departure. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

In the case at bar, the ALJ found that Plaintiff was:
> [U]nable to use his right hand for gripping, manipulating, handling or fingering although he could use the right hand to assist. He is unable to perform repetitive reaching or lifting at or above the shoulder level with the left hand.

(AR 13.)

As a result, the ALJ concluded that Plaintiff could not perform his past work as a construction worker. (AR 17.) At step five, after concluding that Plaintiff's additional non-exertional limitations precluded the use of the medical-vocational guidelines, the ALJ called

3

a vocational expert to testify about what Plaintiff could still do despite his limitations. (AR 18, 71-73.) The vocational expert testified that an individual with Plaintiff's physical and mental abilities could work as a "parking lot booth attendant" (DOT No. 915.473-010) and "unskilled, unarmed security guard, primarily the night shift" (DOT No. 372.667-034). (AR 73.)

Plaintiff claims that the vocational expert's testimony was inconsistent with the DOT and the vocational expert never explained the contradiction. (Joint Stip. at 3-9.) The Agency disagrees. It contends that the vocational expert's testimony was not in conflict with the DOT. (Joint Stip. at 10.) It argues further that, even if it was, the ALJ was entitled to rely on the vocational expert's opinion that Plaintiff could perform these jobs. (Joint Stip. at 10.) For the reasons explained below, the Court sides with Plaintiff.

The vocational expert was clearly departing from the DOT when he testified that Plaintiff could perform the duties of "parking lot booth attendant" under DOT No. 915.473-010 despite his limitations in reaching, handling, and fingering. In the first place, there is no such position as "parking lot booth attendant." The job title found at DOT No. 915.473-010 is "parking-lot attendant." Though there are alternate titles listed for the job in this entry, none of them is "parking lot booth attendant." By qualifying the job that Plaintiff could do, i.e., that he would be confined to an attendant's booth and not required to perform other functions, like park cars, the vocational expert was necessarily departing from the DOT. He was obviously testifying that, in his view, Plaintiff was unable to perform all of the functions of the job described in the DOT. The problem is that the ALJ did not follow up and ask the vocational

expert about this. That was error. The ALJ was required to elicit from the vocational expert the reasons for the departure. *Massachi*, 486 F.3d at 1153-54.

But error alone is not enough to warrant reversal. Plaintiff is only entitled to relief if the error was harmful, i.e., if the expert failed to provide "sufficient support for [his] conclusion so as to justify any potential conflicts." *Id.* at 1154 n.19. Here, the Court concludes that the ALJ's error was harmful. The vocational expert's testimony is three pages long, during which he responded to one hypothetical question. (AR 71-73.) It is impossible to determine from the transcript what the vocational expert's basis was for his deviation from the DOT. The position of parking lot attendant includes various duties, including parking cars, placing tags on windshields, collecting parking fees, and servicing automobiles. (DOT No. 915.473-010.) Reviewing the transcript, the Court is unable to tell which duties the vocational expert believed Plaintiff could perform and which the vocational expert believed Plaintiff could not perform. Nor is it clear how these functions can be performed by someone who is unable to grip, manipulate, handle, or finger with his right hand or repetitively reach or lift above his shoulder level with his left hand. This is particularly true here because the job requires "frequent" reaching, handling, and fingering. (DOT No. 915.473-010.)

The Agency argues that, even assuming that there was a conflict between the DOT and the vocational expert's testimony, the ALJ was entitled to rely on the testimony of the vocational expert in concluding that Plaintiff could work, citing *Light v. Comm'r of Soc. Sec.*, 119 F.3d 789, 793 (9th Cir. 1997). The Agency is half right.

Though it is true that the ALJ can rely on the testimony of a vocational expert even when that testimony is in conflict with the DOT, the vocational expert is required to address the conflict and explain in detail the reasons for the deviation. *Massachi*, 486 F.3d at 1152; SSR 00-4p. The decision to depart from the DOT can only be upheld where the record contains persuasive evidence to support the departure. *See Tommasetti*, 533 F.3d at 1042.

The vocational expert never addressed the conflict here. And the record does not contain persuasive evidence to support the departure. It is simply silent on the issue. In light of Plaintiff's limitations on reaching, fingering, and handling and the fact that the job the vocational expert determined he can perform requires frequent reaching, fingering, and handling, the ALJ's decision that Plaintiff could perform this job warrants reversal.

The same holds true for the ALJ's decision--consistent with the vocational expert's opinion--that Plaintiff could perform the position of "unarmed security guard night watchman." (AR 18, 73.) Again, there is no such position in the DOT. The DOT job title is "security guard." (DOT No. 372.667-034.) This job, too, requires frequent reaching, handling, and fingering. (DOT No. 372.667-034.) By limiting Plaintiff to "unarmed" and "nightime" duties, the vocational expert deviated from the DOT. The question is why. There is nothing in the record to explain it. Thus, remand is required on this issue, too.

Plaintiff also contends that the ALJ erred when she found that Plaintiff could perform the security guard job despite the fact that he was limited to simple repetitive work. Again, the Court agrees.

The security guard job requires a reasoning level of 3, according to the DOT. (DOT No. 372.667-034.) Level 3 reasoning requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (DOT Appendix C, Section III.) Someone who is limited to simple, repetitive tasks is probably unable to perform tasks requiring reasoning level 3. *See, e.g., Wright v. Astrue*, 2010 WL 4553441, at *4 (C.D. Cal. Nov. 3, 2010) (noting that the "weight of authority in the Ninth Circuit holds that level three reasoning skills as defined in the DOT are incompatible with a limitation to simple, repetitive tasks," and citing cases).

The Agency disagrees. It points out that the vocational expert concluded that this job could be performed at the unskilled level, obviating, it believes, the need for level 3 reasoning. (Joint Stip. at 11.) Again, the Agency misses the point. In the first place, assuming that that is what the vocational expert was attempting to convey, he was mixing up two separate vocational considerations. The category "unskilled work" in an SVP rating in a DOT listing "does not address whether a job entails only simple, repetitive tasks." *Meissl v. Barnhart*, 403 F. Supp.2d 981, 983 (C.D. Cal. 2005) (noting that a job's SVP focuses on the time it takes to learn the job's duties, whereas a job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves.").

Second, as discussed above, though the vocational expert can contradict the DOT, he must address the fact that his testimony is inconsistent with the DOT and provide persuasive reasons why the ALJ should accept his testimony. The vocational expert's silence leaves

7

Plaintiff and the Court wondering what the basis is for the deviation and whether her analysis was right. There can be no review of the decision where the vocational expert does not explain it and the record does not either. Absent a clear understanding of the reasons for the deviation, remand is required.

B. <u>The ALJ's Assessment of Plaintiff's Credibility</u>

In his second claim, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. (Joint Stip. at 12-17.) For the following reasons, the Court concludes that the ALJ did not err.

ALJ's are tasked with judging the credibility of witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques as well as the claimant's daily activities. *Id.* at 1284.

At the hearing, Plaintiff alleged that he "hurt 24/7 all the time" because of his arm, shoulder, and back. (AR 55.) He testified that the pain was "excruciating." (AR 70.) He also testified that he would drop objects with his right hand and that he could not use the fingers on that hand. (AR 57-58.) Plaintiff alleged that the most he could lift was a ten-pound bag of potatoes. (AR 60.) He estimated that, due to his arthritis, he could only walk a block, and sometimes not even that far because his legs would give out. (AR 63-64.) Plaintiff also testified that, if he sat for long periods, he would

"stiffen up" and cramp across his back and down his left leg. (AR 66.) He estimated that he could sit for only 45 minutes. (AR 67.)

The ALJ found that Plaintiff was not credible. She based this finding on the fact that: (1) the objective medical record contained no evidence of treatment for seizures, right arm or spinal complaints, and only a minimal amount of treatment for Plaintiff's other complaints; (2) Plaintiff reported no use of pain medications for his allegedly-excruciating pain; (3) Plaintiff moved his left shoulder freely during an examination, despite his alleged inability to move it at all; (4) Plaintiff appeared at the hearing with a cane, but did not appear to use it, and treating sources reported that he ambulated without a limp and without difficulty; (5) treating sources reported that Plaintiff's acute pain was not treated because of the discrepancy between his pain complaints and the unremarkable clinical findings; and (6) treating sources noted that Plaintiff came to see them primarily to request that they complete disability paperwork, which suggested a motive to exaggerate symptoms. (AR 16-17.) As explained below, the ALJ's reasons are legitimate and her findings are supported by this record. As such, her determination that Plaintiff was not credible will be affirmed.

The first reason offered by the ALJ to discount Plaintiff's credibility was that there was no evidence of treatment for Plaintiff's alleged seizures, right arm pain, and spinal complaints in the record. (AR 16.) The record supports this finding. In June 2007, internist Dr. Ursula Taylor reported that Plaintiff was "not sure" if he had ever received medical attention for his back injury, joint pain, or seizures. (AR 219.) Likewise, an orthopedic consultation in May 2008 failed to mention any complaint regarding, or

treatment for, right arm or back pain. (AR 255-56.) The ALJ's determination that Plaintiff had received little, if any, treatment for these conditions was a legitimate reason for discounting his credibility. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (holding that ALJ was entitled to draw inference from general lack of medical care to discredit claimant's testimony); *see also Meanel v Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

The other five reasons the ALJ gave to support her credibility determination are all aspects of her finding that there was a "suggestion of symptom magnification in the record." (AR 16.) The record supports this finding, too. On August 24, 2007, Plaintiff was seen in the urgent care facility for arthritis pain in his left shoulder, back, and legs, which he rated as a ten out of ten in intensity. (AR 239.) The doctor who treated him apparently did not believe Plaintiff's complaint, noting that he had come "today because he needs some disability paperwork completed"; that despite Plaintiff's claim that he could not move his left shoulder, he moved it without any problem during an examination; that he walked without a limp and had a "brisk pace[,] mostly holding his walking cane"; and that he appeared to be in "[zero] distress." (AR 240.) The doctor explained that Plaintiff's supposedly acute pain was not treated because of the "major discrepancy between [his] subjective complaint and [the] clinical findings." (AR 241.) Thus, the ALJ's finding that Plaintiff had exaggerated his symptoms is supported by the record and

was a legitimate basis for discrediting his testimony.[1] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). As such, the ALJ's credibility determination is affirmed.

IV.

CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

Dated: April 29, 2011

/s/ Patrick J. Walsh
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\CLARK, D 9453\Memo_Opinion.wpd

---

[1] Although the ALJ ultimately declined to adopt the physical limitations findings of examining physician Dr. Cunningham, his observations and conclusions also support the ALJ's finding that Plaintiff exaggerated his symptoms. (AR 266-67, 270 (noting that Plaintiff walked, sat, and stood without discomfort, that his demonstrated grip strength was "non-credible," and that he was seen walking rapidly without using his cane).

11